391 So.2d 445 (1980)
STATE of Louisiana
v.
Darrell Wayne LaFLEUR.
No. 67509.
Supreme Court of Louisiana.
November 21, 1980.
*446 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. Gregory Arnette, Jr., Dist. Atty., William Riley, III, Sp. Prosecutor, for plaintiff-appellee.
Stewart Thomas, Jennings, for defendant-appellant.
DIXON, Chief Justice.
On April 8, 1980 the defendant was charged by bill of information with perjury (R.S. 14:123). In rapid succession he was arraigned, waived counsel, pleaded guilty and testified. He was then sentenced to three years' imprisonment at hard labor. The defendant applied for a writ of habeas corpus, which he was denied, and he now appeals his conviction, alleging that the trial judge committed several errors in the course of the proceedings.
The defendant's perjury charge arose out of a previous proceeding involving a charge of petty theft (R.S. 14:67). The defendant and three other men were accused of stealing about $60.00 from a service station in Lacassine, Louisiana. At his first court appearance for arraignment on the petty theft charge (March 25), the defendant asked the court to appoint counsel to represent him. The judge refused, remarking that the defendant had been employed until his arrest and had been able to raise $150.00 for bail. The judge then revoked the defendant's bail bond and remanded him to jail. On April 1, after a week spent in the parish jail, the defendant was again brought to court on the theft charge. This time he said he did not want counsel and signed a waiver form. He then pleaded guilty to the charge, and was placed on the stand by the judge to testify. In the course of this testimony he made the statements that led to the perjury charge. He admitted that he was involved in the theft, but he contended that he did not participate in its planing. The judge warned the defendant that his story differed from that of other defendants and offered him a chance to change his testimony. He refused. After the three other men testified, the defendant was recalled to the stand and warned that he could incur a perjury charge. He did not respond. At the April 8 hearing on the perjury charge he admitted that he had lied and that he had taken part in planning the crime. He stated that he had not changed his testimony because he was nervous and scared.
The defendant now alleges that the trial judge imposed an excessive sentence and failed to comply with the requirements of C.Cr.P. 894.1 in sentencing him.
Article 1, § 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment; the excessiveness of a sentence is a question of law reviewable by this court under its appellate jurisdiction. Article 5, § 5(C) of the Louisiana Constitution of 1974. C.Cr.P. 894.1 provides *447 sentencing guidelines to assist judges in imposing appropriate sentences and in adapting sentences to offenders as well as to offenses. State v. Jackson, 360 So.2d 842 (La.1978). It enumerates three factors which justify imprisonment and eleven factors which suggest probation or suspension of sentence. It also requires the trial judge to state for the record the considerations taken into account and the factual basis therefor in imposing sentence. This required statement is intended to clarify the reason for a given sentence and to aid this court in reviewing a sentence alleged to be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). We have repeatedly stated that we will vacate a sentence and remand for resentencing where the trial court does not comply with the requirements of article 894.1. State v. Gist, 369 So.2d 1339 (La. 1979); State v. Sepulvado, 359 So.2d 137 (La.1978). In this case, the trial judge made no reference to the factors cited in the article nor is there any indiction that he took them into consideration. In imposing sentence, the judge said only that he hoped the sentence would teach the community to speak the truth in court. While the judge's objective was a commendable one, it was not an acceptable basis for the relatively harsh penalty imposed on the defendant.[1] The defendant was twenty years old, and no prior criminal conduct is shown in the record. He admitted his involvement in the crime from the start, although he equivocated about the degree to which he was involved in its planning. Normally, where compliance with 894.1 is so inadequate as to render unfeasible an evaluation of the appropriateness of a sentence, we remand for resentencing. However, in the case at bar, there were other significant errors committed in the proceedings which call for reversal of the conviction and a new trial.
The defendant next attacks the validity of his guilty plea. It is now well established that a guilty plea is constitutionally valid only if the record clearly shows that the defendant was informed of his constitutional rights, including the right to jury trial, the right to confront accusers, and the privilege against self-incrimination, and then knowingly and voluntarily waived these rights. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The trial judge cannot rely on an assertion that the rights were explained to the defendant out of court; he must independently determine, through a direct colloquy with the defendant, whether the defendant fully understands the connotation and consequences of the guilty plea. State v. Williams, 384 So.2d 779 (La.1980); State v. Martin, 382 So.2d 933 (La.1980). In the case before us, there is no indication that the trial judge made any effort to determine whether the uncounseled defendant really understood the proceedings. The defendant signed a printed form waiving his rights, but neither the judge nor an attorney explained the form to him. The judge simply asked the defendant if he had read the questions and understood them. The defendant answered that he did. The form itself was defective, as it made no mention of the privilege against self-incrimination. Because the defendant was unassisted by counsel, the judge's failure to discuss the meaning of the plea was a particularly serious error justifying reversal of the conviction.
Finally, the defendant contends that the trial judge erred in refusing to appoint counsel to represent him. The right to assistance of counsel is fundamental in our legal system and essential to ensure a fair trial. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Absent a knowing and intelligent waiver of this right, no person may be imprisoned for any offense, whether classified as petty, misdemeanor or felony, unless he is represented by counsel at trial. Argersinger v. Hamlin, *448 supra, 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538. As in the case of a guilty plea, the record must demonstrate that the defendant was informed of the consequences of proceeding without counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). There should be some indication that the trial judge tried to assess the defendant's literacy, competency, understanding and volition before he accepted the waiver of counsel. State v. Bell, 381 So.2d 393 (La.1980). The record in this case is bereft of such indications. The trial judge made no attempt to impress upon the defendant the importance of having counsel; on the contrary, he implicitly induced the waiver by refusing the defendant's request and remanding him to jail when he sought court appointed counsel at his first appearance on the theft charge.
In the perjury proceeding at issue here, the defendant never asked for counsel, probably assuming with good cause that the request would be denied. The judge simply had him sign the waiver form with no comment whatsoever. Under the circumstances, the defendant can hardly be said to have waived his right to counsel freely and knowingly. While a waiver of counsel may be implied in a case where the defendant is clearly able to secure retained counsel but persists in demanding court appointed counsel, the defendant's financial ability to employ counsel was never properly evaluated in this case.
At the arraignment on the theft charge, the defendant said he wanted an attorney but couldn't afford one. The judge questioned him and learned that he had been earning $8.00 an hour with a construction company and was living at home. Observing that the defendant paid his $150.00 bail, the judge apparently concluded that he had the financial resources to hire an attorney and remanded him to jail with the following comment:
"There's no reason why the Court should appoint an attorney for you. I don't suppose these lawyers clear eight dollars an hour. ... You can either waive or-but you have a seat in the jail until you're ready to decide what you want to do."
The judge's brief interrogation does not comply with R.S. 15:147, which sets forth the procedure to be used in determining whether an accused is indigent.[2] Since it is not clear that the defendant could afford to hire an attorney, we cannot find an implicit waiver of the right to counsel here. The explicit waiver represented by the signed form must be considered invalid because not voluntarily and intelligently made.
*449 The plea of guilty is set aside, the conviction and sentence are reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.[3]
MARCUS, J., specially concurring.
WATSON, J., concurred in the result.
BLANCHE, J., concurs with reasons.
BLANCHE, Justice (concurring).
The mechanical parroting of the three magical proofs of voluntariness by the trial judge is, in this writer's opinion, a poor way to satisfy us as to whether a guilty plea is knowingly and intelligently made. Sadly, we require the trial judge to make this recitation, evidently not being able to trust his counsel, whether appointed or employed; or the trial judge, who has a parallel duty to accept only those pleas that are knowingly and intelligently made. This writer is personably satisfied that the colloquy means very little, if anything, to the defendant who wants to plead guilty. Accordingly, it is suggested that if we are not satisfied to trust the court and counsel, then we should require the defendant to make a factual admission as to each and every element of the offense and insist that such admissions satisfy Jackson standards.
Such a procedure at first blush seems to be time consuming but, in reality, it is not when time is computed for the furnishing of Boykin transcripts and the multitudinous habeas writs which are acted upon by the Court wherein such pleas are challenged.
NOTES
[1] In State v. Touchet, 372 So.2d 1184 (La.1979), the trial judge also expressed a desire to teach young people a lesson when he sentenced the defendant for distribution of marijuana. We remanded that case for resentencing with instructions to consider the guidelines provided by C.Cr.P. 894.1.
[2] R.S. 15:147 states:

"A. The determination of indigency of any accused person shall be made by the court at any stage of the proceedings. The chief indigent defender or his assistants, or a member of the indigent defender panel appointed by the board or the court for such purpose, shall be allowed to summon witnesses to testify before the court concerning the financial ability of any accused person to employ counsel for his defense.
In determining whether or not a person is indigent and entitled to the appointment of counsel, the court shall consider:
a) Whether the person is a needy person and the extent of his ability to pay, the court shall consider such factors as income, property owned, outstanding obligations, number and ages of dependents;
b) Release on bail alone shall not disqualify a person for appointment of counsel. In each case, the person subject to the penalty of perjury shall certify in writing such material factors relating to his ability to pay as the court prescribes."
A Louisiana State Bar Association report to the commission on the indigent defender system suggests that the trial judge should appoint counsel in cases where a question of indigency arises (and resolve the question of indigency). Where the court appoints an attorney and later finds that the defendant is able to pay, it may order partial reimbursement under R.S. 15:148, which states:
"A. To the extent that a person is financially able to provide for an attorney, other necessary services and facilities of representation and court costs, the court shall order him to pay for these items. The court may order payment in installments, or in any manner which it believes reasonable and compatible with the defendant's financial ability.
B. Payments so made shall be transmitted to and become a part of the indigent defender fund of the district in which the person is prosecuted."
[3] A supplemental brief, mailed November 17, 1980, after oral argument on November 14, 1980, adverts to errors in the proceedings on the theft charge. Those proceedings are not before the court; only the proceedings involving the perjury charge are here considered.