459 So.2d 172 (1984)
STATE of Louisiana, CITY OF BOSSIER CITY, Appellee,
v.
Melissa A. WALPOLE, Appellant.
No. 16674-KW.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Writ Denied January 7, 1985.
Michael G. Latimer, Bossier City, for appellant.
William J. Guste, Jr., Atty. Gen., Henry Brown, Dist. Atty., James Bullers, Asst. Dist. Atty., Bossier City, for appellee.
*173 Before PRICE, HALL and SEXTON, JJ.
PRICE, Judge.
The defendant, Melissa A. Walpole, sought this court's supervisory review of her probation revocation from her conviction of driving while intoxicated (DWI) in violation of La.R.S. 14:98. We granted the defendant's application to consider the question of whether the defendant's uncounseled guilty plea to driving while intoxicated, second offense, was admissible to serve as a basis to revoke her probation for DWI, first offense. Finding error by the city court, we reverse.
On October 18, 1983, the defendant plead guilty, without counsel, to driving while intoxicated, first offense. The defendant was sentenced to pay a fine of five hundred dollars and cost of court or serve sixty days in jail in default of payment and to serve an additional ninety days in jail. Of the five hundred dollar fine, one hundred dollars was suspended and the ninety day jail term was suspended. The defendant was additionally placed on one year supervised probation. On December 11, 1983 the defendant was arrested and charged with driving while intoxicated, second offense. The record reflects that on December 15, 1983, Susan Allen, a probation officer for the Bossier Parish Sheriff's Department, wrote a letter to the Bossier City Court Judge informing him that the defendant was on probation for DWI, first offense, and that she had been arrested on December 11, 1983 for DWI, second offense. On February 27, 1984, the defendant, again without counsel, plead guilty to DWI, second offense, before the Bossier City Court. On March 5, 1984, Susan Allen, Bossier Parish probation officer, filed a petition for cause seeking to revoke the defendant's probation for DWI, first offense, based upon her guilty plea to DWI, second offense.
On April 23, 1984, the defendant's probation hearing was held before the Bossier City Court. In the formal notice of revocation, the Bossier Parish probation officer specified that the defendant had violated her conditions of probation which state, "refrain from criminal conduct, specifically the violation of any state, federal, local, or municipal law." At the revocation hearing, the state did not attempt to prove the underlying DWI offense but relied exclusively upon the fact that the defendant had plead guilty to it. To this extent the validity of the defendant's probation revocation turns on the validity of the guilty plea to DWI, second offense.
The defendant asserts that her guilty plea to DWI, second offense, is invalid in that there was no valid waiver of her right to counsel.
The right to assistance of counsel is fundamental in our legal system and essential to insure a fair trial. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Additionally, in a criminal prosecution in this state an accused is entitled to representation by counsel chosen by the accused. If the offense with which the accused is charged is one punishable by imprisonment and the accused is an indigent, he/she has a right to court appointed counsel. La.C.Cr.P. Art. 513.
At the time of the defendant's guilty plea for DWI second offense, before the defendant was called to plead, the trial judge offered the following instruction "en masse" to all defendant's pleading guilty present in the courtroom:
It's has been indicated to the court that you wish to enter a plea of guilty to your charge. In order for the court to be able to accept your guilty plea, it'll be necessary that I advise you of certain rights that you have, rights which you will be giving up if you plead guilty. Do each of you understand the nature of the charge that has been placed against you? Does anyone need me to explain that charge to you? Do you understand that if you plead guilty, you'll then convicted of this charge and you'll give up the following rights which you have. One of which is to a trial in this courtroom or by a jury, if applicable. You give up your right to *174 confront and cross examine any witness who accuses you of this charge. You give up your privilege against compulsory self-incrimination or having to take the stand and testify. You give up your right to the compulsory process of this court to require your own witnesses to come here and testify for you. You give up your right to appeal from the verdict of guilty. You give up your right to be represented at all times during all stages of the proceedings, including appeal by an attorney of your choice or if you don't have the money to hire your own attorney, this court will appoint one to represent you without any cost to you. If, for some reason, you are charged with this same offense at a later date, the fact that you plead guilty today may cause you to have a more severe penalty at that later date if you plead guilty or are found guilty at that time. After having been further advised of your rights, do each of you still voluntarily wish to enter a plea of guilty. Alright, if you will just have a seat and come up when your name is called.
Thereafter, the defendant's name was called and the following colloquy took place between the trial judge and the defendant:
Court: Melissa Walpole, do you understand that you are giving up your right to a trial?
Defendant: Yes sir.
Court: Do you understand that you are giving up your privilege against compulsory self incrimination?
Defendant: Yes sir.
Court: Do you understand that you are giving up your right to confront your accusers?
Defendant: Yes sir.
Court: Are you doing this voluntarily?
Defendant: Yes sir.
Court: The court will accept the guilty plea.
In addition to the colloquy, the defendant signed two forms: one waiving her right to be represented by an attorney, and second, a waiver of constitutional rights and a plea of guilty. No further questioning or explanation occurred between the trial judge and the defendant. There was no additional attempt to ascertain whether the defendant understood or appreciated the consequences of her actions by pleading guilty.
In State v. Varnado, 384 So.2d 440 (La. 1980) the supreme court held that where the state did not introduce evidence to prove that the defendant was guilty of the underlying offense, but rather relied entirely upon the defendant's plea of guilty and conviction as a result thereof, and then rested its case without proving any underlying facts, the uncounselled guilty plea was inadmissible and could not serve as a basis to revoke the defendant's probation. Therefore, the issue before this court is whether the defendant made a knowing and intelligent waiver of counsel when pleading guilty to DWI, second offense.
Absent a knowing and intelligent waiver of the right to counsel, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or a felony, unless he is represented by counsel at trial. Argersinger v. Hamlin, supra. There should be some indication that the trial judge tried to assess the defendant's literacy, competency, understanding and volition before he accepted the waiver of counsel. State v. Bell, 381 So.2d 393 (La.,1980); City of Monroe v. Wyrick, 393 So.2d 1273 (La.,1981).
An examination of the record in the present case indicates that there was no colloquy between the judge and the defendant concerning her right to counsel. The only reference to the defendant's right to counsel is found in the court's general instruction to all those pleading guilty in the courtroom and also in the waiver of her right to counsel forms signed by the defendant.
The Louisiana Supreme Court has repeatedly found disfavor in the use of "en masse" procedures in accepting guilty pleas. In LeBlanc v. Watson, 378 So.2d 427 (La.1979) the supreme court noted that the city court in Monroe continued to follow the procedure of collectively advising *175 defendants of their right to counsel despite earlier disapproval of that procedure in State v. Carlisle, 315 So.2d 675 (La.,1975). In Carlisle and LeBlanc, the supreme court concluded that the trial judge's en masse procedure could serve as a general introduction for defendants, but was not sufficient to assure that the accused in fact received instruction as to his rights, understood them, and intelligently and knowingly waived his right to counsel.
In City of Monroe v. Wyrick, supra, the supreme court again found that the trial court has the duty not only of advising of the right to counsel, but also of ascertaining whether or not the accused knowingly and intelligently waives his right to counsel. The court found that the trial judge passed that responsibility onto the defendant when it left it up to the defendant to state whether or not he understood his rights. The trial judge assumed that the rights referred to were those rights he had explained to a group collectively at the beginning of the session of court. The supreme court found that the record does not show either that the defendant's right to counsel were explained to him or that he understood them and therefore knowingly and intelligently waived them.
The record in the present case is void of any colloquy between the trial court and the defendant concerning her right to counsel. The use of the waiver of the right to counsel form in the present case does not cure this deficiency. The form in no way reflects that the defendant understood her right to counsel. Further, the record is void of any attempt by the trial judge to personally assess the defendant's literacy, competency, understanding, and volition before he accepted the waiver of counsel.
Therefore, we find the procedure used by the Bossier City Court to be inadequate in that there is no showing that the defendant knowing and intelligently waived her right to counsel.
In view of the fact that the state did not exercise its right to introduce evidence to prove the crime of driving while intoxicated, second offense, at the revocation hearing, and relied entirely upon the plea of guilty and conviction as a result thereof, the uncounselled guilty plea which was inadmissible cannot serve as a basis to revoke the defendant's probation. State v. Varnado, supra.
It is therefore ordered that the judgment of the Bossier City Court revoking defendant's probation is reversed and the rule for probation revocation is hereby dismissed.
REVERSED.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, dissenting
I respectfully dissent.
In the instant case, the minutes reflect that the case was continued at the defendant's first appearance for approximately two weeks. When the defendant returned, the minutes reflect arraignment, a not guilty plea and a trial setting. Also at that time, January 16, 1984, this college student signed a form which specifically stated that she
"... [had] been advised of my right to be represented by an attorney in every stage of the proceedings against me and further, that if I am financially unable to afford the services of an attorney, one will be appointed for me by the court.
"I freely and voluntarily waive the right to be represented by an attorney in this matter and choose to represent myself."
The defendant signed another form with this same wording on February 27, 1984 when she changed her plea. Moreover, at the plea of guilty, the minutes and the transcript reflect that the defendant was individually Boykinized by the trial judge. I recognize that the defendant was only orally advised en masse of her right to have an appointed attorney if she was unable to afford one. However, the record reflects that the defendant was advised of the right to counsel at least once en masse and on two separate occasions individually signed a very specific and well-written *176 waiver form. In my view, under all of these circumstances, the record reflects that the defendant was sufficiently and adequately advised of the right to counsel, understood that advice, and specifically waived the right to be represented by counsel in this cause.
Furthermore, I find nothing in the jurisprudence prohibiting our reliance on such a record. State v. LeFleur, 391 So.2d 445 (La.1980), is arguably the strongest precedent for the majority view. But, in my view, that case can and should be distinguished. In LeFleur, the Supreme Court found that the defendant had been originally coerced into waiving counsel without ample explanation or inquiry by the court. As I appreciate it, the basis for reversal was that at arraignment at a later date, and thus without counsel, the defendant signed a waiver of Boykin rights without any explanation of those rights from the trial court. In other words, the defendant whose appearance without counsel was apparently not of his own volition was Boykinized only by waiver formand it was this whole procedure which caused the reversal.
State v. Bell, 381 So.2d 393 (La.1980), cited by the majority, can and should be distinguished. That case was a four to three decision in an appeal from a burglary conviction during which the defendant had represented himself at trial. It appears that the trial court record was found to be confusing regarding the manner in which that defendant came to be unrepresented. As I appreciate it, the specific holding was that the record did not sufficiently reflect a trial court inquiry into the defendant's ability to defend himself during a felony trial, relying on dicta in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
Faretta specifically held that a defendant had a federal constitutional right to represent himself. The defendant had actively attempted to represent himself in that cause in a state prosecution in California. The trial judge held a hearing to inquire into the defendant's ability to conduct his own defense, but later determined that the defendant had no federal constitutional right to conduct that defense, relying on a recent California Supreme Court opinion. In reversing and finding that the defendant had a federal constitutional right to represent himself, the United States Supreme Court stated:
"The right to defend is personal. The defendant, and not his lawyer or the state, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored...." (citation omitted, emphasis added) Faretta, supra, 95 S.Ct. at pp. 2540-2541.
The United States Supreme Court concluded that by forcing the defendant to accept state-appointed counsel against his will under the circumstances of that case, the State of California "deprived him of his constitutional right to conduct his own defense." Faretta, supra, 95 S.Ct. at 2541.
During this discussion, the Supreme Court mentioned certain brief guidelines of inquiry for a trial court to use in determining whether a defendant can represent himself in a felony trial:
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes wide open." (citation omitted) Faretta, supra, 95 S.Ct. at p. 2541.
As I perceive it, our jurisprudential confusion in this area was begun by language in the narrow LaFleur decision which I suggest is dicta. In LaFleur, after already determining that the trial court's action in not appointing counsel involved elements of coercion and that the defendant's act of signing a defective rights form under those circumstances without explanation *177 from either an attorney or the court was error, the court stated:
As in the case of a guilty plea, the record must demonstrate that the defendant was informed of the consequences of proceeding without counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). There should be some indication that the trial judge tried to assess the defendant's literacy, competency, understanding and volition before he accepted the waiver of counsel. State v. Bell, 381 So.2d 393 (La.1980).
Thus, in addition to being dicta, the LaFleur language relied on the close Bell case, which relied on a very minor aspect of Faretta. Moreover, Faretta and Bell both dealt with circumstances in which a defendant was representing himself at a felony trial. I suggest that Bell is only an arguable extension of Faretta but that it is a long jump from Faretta/Bell to LaFleur, and it is even a further distance to the result here reached.[*] In sum, in my view, Faretta and Bell were overextended in dicta by LaFleur.
I believe that under the circumstances of this cause the defendant knowingly and intelligently waived counsel and that the individual Boykinizationparticularly when coupled with the extremely detailed Boykin form found in this recordshowed that the defendant was well-apprised of the consequences of that representation.
I would affirm.
NOTES
[*] Note that City of Monroe v. Wyrick, 393 So.2d 1273 (La.1981), gives further credence to the Faretta/Bell/LaFleur progression, also without evaluation.