LOTTINGER, Judge.
Defendant, Robert Daniel Goodwin, was charged by bill of information with two counts of issuing worthless checks in an amount of five hundred dollars or more. La.R.S. 14:71. At his arraignment on October 29, 1987, defendant informed the trial court he would be represented by counsel, waived his right to an attorney, and entered a plea of not guilty to the charges. Thereafter, at a February 11, 1988, status conference, defendant appeared in court without counsel. At the status conference, after a Boykin examination, the trial court allowed defendant to withdraw his initial pleas of not guilty; and defendant pled guilty to both charges. Subsequently, the trial court sentenced defendant to imprisonment at hard labor for a term of ten years on each count, to run concurrently. The trial court advised defendant of his right to appeal and appointed the Office of Public Defender to represent defendant. Defendant now appeals his conviction and sentence, urging two assignments of error:
1. The trial court committed error when it allowed defendant to enter a plea of guilty to each of the instant charges without first determining that each of the pleas was made voluntarily with understanding of the nature of the charge.
2. The trial court committed error when it imposed excessive sentences and failed to comply with the sentencing guidelines contained in La.Code Crim.P. art. 894.1.
ASSIGNMENT OF ERROR NO. 1
By means of this assignment, defendant contends that the trial court erred when it accepted his guilty pleas on two bases: (1) that the pleas were made without the assistance of counsel; and (2) that the pleas were neither voluntary nor knowing and intelligent.
*717 The right to assistance of counsel is fundamental in our legal system and essential to ensure a fair trial. Argersinger v. Hamlin, 407 U.S. 25, 31-32, 92 S.Ct. 2006, 2009-2010, 32 L.Ed.2d 530 (1972); State v. LaFleur, 391 So.2d 445, 447 (La. 1980). At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or counsel appointed by the court if he is indigent and charged with an offense punishable by imprisonment. La. Const. Art. 1, § 13 (1974). Absent a knowing and intelligent waiver of this right, no person may be imprisoned for any offense, whether classified as petty, misdemeanor or felony, unless he is represented by counsel at trial. Argersinger v. Hamlin, 407 U.S. at 37, 93 S.Ct. at 2012; State v. Nevels, 457 So.2d 1254, 1256 (La. App. 1st Cir.1984). The determination of whether or not there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); State v. Harper, 381 So.2d 468, 471 (La.1980).
“Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ ”
Faretta v. California, 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) [citing Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)]. Thus, before a trial judge can allow a defendant to represent himself, he must determine whether or not defendant’s waiver of counsel is intelligently and voluntarily made, and whether or not his assertion of his right to represent himself is clear and unequivocal. State v. Hegwood, 345 So.2d 1179, 1181-1182 (La.1977); State v. Dupre, 500 So.2d 873, 878 (La.App. 1st Cir.1986), writ denied, 505 So.2d 55 (La.1987); State v. Smith, 479 So.2d 1062, 1064 (La.App. 3rd Cir.1985).
In the instant case, the trial court questioned defendant, in pertinent part, as follows:
Q. How much education do you have?
A. (GOODWIN) Ninth grade. ⅜! ¡⅝ * * sje
Q. Are you taking any drugs or medicine at this time?
A. (GOODWIN) I take stuff for my ulcers, Tagamet, but no kind of drug.
Q. Have you been drinking? Are you intoxicated at this time?
A. (GOODWIN) No, sir, I haven’t. No, sir.
Q. All right, do you understand what you’re doing today?
A. (GOODWIN) Yes, sir.
Q. All right, now, you’ve been represented by Mr. Emile Weber?
A. (GOODWIN) Yes, sir.
Q. He’s not here today.
A. (GOODWIN) No, sir.
Q. Okay. Have you discussed your case with him?
A. (GOODWIN) Yes, sir.
Q. Did you discuss that you were going to plead guilty to this?
A. (GOODWIN) Yes, sir.
Q. All right. Are you satisfied with the advice he gave you?
A. (GOODWIN) Yes, sir.
Q. All right. Are you — do you want to plead guilty without him here today?
A. (GOODWIN) Yes, sir, I’d like—
Q. Okay, you understand that you could have your attorney here with you if you chose to do so?
A. (GOODWIN) Yes, sir, I understand.
Q. All right. Mr. Goodwin, you’re charged with two counts of issuing worthless checks, a felony. Each count in your case is over $500.00, all right.
A. (GOODWIN) Yes, sir.
Q. Now, I’m going to tell you a little bit about issuing worthless checks, about what you’re charged with.
[The trial court then essentially read the provisions of La.R.S. 14:71 defining the *718 crime of issuing worthless checks and the applicable penalty provision, including the possibility of court ordered restitution in the amount of the checks.]
Mr. Goodwin, do you understand the charge against you?
A. (GOODWIN) Yes, sir, Your Honor.
Q. All right, do you have any questions about that or the possible penalties?
A. (GOODWIN) Sir?
Q. Do you have any question about that or the possible penalties? In other words you could get ten years on each count which would be a total of twenty years.
A. (GOODWIN) Yes, sir.
Q. Do you have any questions about any — the charge or the possible penalty?
A. (GOODWIN) No, sir, I'd just like to make restitution on the checks if I could. * * sjs * ¡⅜ *
Q. * * * Mr. Goodwin, you could have your attorney here with you or if you weren’t able to work out arrangements with Mr. Weber, if it wasn’t satisfactory and you qualified, you could have either have an appointed attorney or you could go hire another lawyer.
A. (GOODWIN) Yes, sir.
Q. [You have] a right against self-incrimination, that is a right to remain silent. No one can force you to plead guilty. No one can force you to give evidence against yourself. This right to remain silent would continue throughout your trial. You could not be called as a witness against yourself by the State, and you would have the right to remain silent. When you plead guilty, you in fact admit that you are guilt [sic] and you do incriminate yourself. [You] would have — also have a right to a speedy and public trial by a jury. In this case it would be a jury of six persons who would have to all agree on reaching a verdict. You could give up your right to a jury trial and be tried by me, by the Court alone. At your trial the State would be required to prove your guilt beyond a reasonable doubt. When you plead guilty, there will be no trial. You also have a right to appeal your conviction if you went to trial and you were convicted. When you plead guilty, you won’t be able to appeal your conviction. You also have a right to cross-examine and question the witnesses against you, and you could compel the attendance of witnesses on your behalf. You could subpoena witnesses to come to Court for you. * * *
Q. All right. Mr. Goodwin, do you understand those rights?
A. (GOODWIN) Yes, sir, I understand. Yes, sir. * * Sfc * * 3fc
Q. Mr. Goodwin, do you wish to give up those rights?
A. (GOODWIN) Yes, sir. * ⅜ ⅜: »j< ⅜: *
Q. Why are you pleading guilty?
A. (GOODWIN) Well, I’d like to go ahead and get it over with. If there is anyway I can get probation, I’d appreciate it. If not — I want to try to make restitution on my checks.
Q. When you wrote these checks, did you have the money in the bank to pay for those?
A. (GOODWIN) I didn't have that much money in the bank, Your Honor.
Q. All right. Do you understand that you’ll be classified as a felony offender?
A. (GOODWIN) Yes, sir.
Q. Should you be convicted of another felony in the future you could be charged as a habitual offender and subjected to increased penalties.
A. (GOODWIN) Yes, sir. ******
Q. All right. After having the Court point out all these Constitutional Rights that you give up when you plead guilty, do you still choose to give them up and plead guilty, Mr. Goodwin?
A. (GOODWIN) Yes, sir.
In the instant case, the record does not indicate that defendant’s waiver of the right to counsel was made intelligently and voluntarily so that his decision to represent *719 himself was a clear and unequivocal choice. The record does not indicate that defendant had given any serious thought to self-representation or that he had explored the possibility of the grave risks inherent in such action.
There should be some indication that the trial court tried to assess defendant’s literacy, competency, understanding and volition before he accepted the waiver of counsel. State v. LaFleur, 391 So.2d at 448. With the exception of the trial court’s inquiry into defendant’s educational background, whether or not defendant had been taking drugs or medicine and whether or not defendant was intoxicated, the record reflects no attempt by the trial court to objectively assess defendant’s literacy, competency, understanding, and volition. We note with particularity that the record does not reflect that the trial court made defendant aware of the dangers and disadvantages of self-representation. Hence, this record does not establish that defendant knew what he was doing and that his choice was made with open eyes.
Accordingly, defendant’s conviction and sentence are reversed; and this case is remanded to the trial court for further proceedings in accordance with law.[1]
REVERSED AND REMANDED.

. Because we find merit in assignment of error one, we need not and do not address defendant’s assignment of error two.