728 So.2d 458 (1998)
STATE of Louisiana, Appellee,
v.
John INZINA, Jr., Appellant.
No. 31,439-KA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*461 Charles R. Blaylock, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, Susan Hamm, Assistant District Attorney, Counsel for Appellee.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, Judge.
Following his conviction for driving while intoxicated, third offense, a violation of La. R.S. 14:98, the defendant, John Inzina, Jr., was sentenced to serve five years imprisonment at hard labor. Three years of the sentence were suspended and the remaining two years were ordered to be served without benefit of parole, probation or suspension of sentence. Upon release from incarceration, the defendant was ordered to serve five years supervised probation. In addition, the defendant was ordered to pay a fine of $2,000.00. The defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
Just after 9 P.M. on November 11, 1996, Louisiana State Police Trooper Tim Grigsby was on routine patrol in an area of mixed residential and business locations on Louisiana Highway 840-1 in Ouachita Parish. As he approached a gradual curve in the road, he saw the vehicle in front of him, driven by the defendant, drift to the right and cross the "fog line." According to Trooper Grigsby:
We were both westbound. And when we went around this gradual left-hand curve I observed Mr. Inzina go across the fog line here, nearly striking the storm drain. There's a white fog line that runs along... runs parallel with the edge of the highway. And the ... between the storm drain and the fog line is at least ... is at least 10 inches, but in my estimation it's at least a foot. And Mr. Inzina ... I observed his right of his vehicle go across the fog line here as indicated on the drawing at least as I stated nearly striking the storm drain. So he went at least ... at least 8 inches.
The trooper then watched as the defendant jerked his car back into the lane. Trooper Grisgsby also stated, "At the angle he was going, had he continued on and struck the storm drain, in all likelihood it would burst the tire that struck it." According to the trooper, although the lighting in the area was poor, the fog line was clearly marked and easily visible in the beam of the car's headlights. The trooper also said that he was familiar with the area and that he knew pedestrians frequently walked along the edge of the roadway at that location. At least one nearby bar was open at the time. The trooper said that he was concerned that the defendant might strike a pedestrian, although he did not see any at the time he made the stop.
Trooper Grigsby turned on his emergency lights and followed behind the defendant, who continued to weave within his lane, for about another 1/10 mile. The defendant pulled over into a nearby parking lot and got out of his car. The trooper saw that the defendant "was weaving ... I mean he was swaying from side to side as he walked back toward my vehicle." Trooper Grigsby stated, "Upon contact with him I had detected an odor on his breath that I associate with alcoholic beverage. His eyes were bloodshot and watery." The trooper also said that the defendant swayed as he stood still, that his speech *462 was slurred and that, overall, "it was obvious that alcohol had some effect on him."
The trooper then conducted field sobriety tests on the defendant. In the walk and turn test, the defendant had to stop to steady himself, failed to touch his heel to his toe and could not correctly count his steps. In the one leg stand test, the defendant swayed from side to side and put his foot down three times. The trooper stopped this test out of concern that the defendant would fall. Finally, the trooper observed the defendant's eyes during a horizontal gaze nystagmus (HGN) test and noted that the defendant's eyes could not track smoothly, indicating that the defendant was intoxicated.
At that point, the trooper arrested the defendant for driving while intoxicated (DWI) and transported him to the Monroe Police Department headquarters to perform an Intoxilyzer test. However, the Intoxilyzer breath tests yielded no result. The first test could not be completed because of tobacco residue in the defendant's mouth. The defendant chewed a smoked cigarette after his arrest. For the second test, the defendant did not blow hard enough to provide "a proper sample." Although the defendant offered to try again, the trooper did not attempt a third test. Instead, he wrote "refused" on the Intoxilyzer printout. The trooper remembered the defendant complaining of a respiratory problem.
The defendant was charged by bill of information with 4th offense DWI. The defendant's prior record showed DWI offenses in 1990, 1994 and 1995. However, the defendant's 1990 conviction in Monroe City Court was ultimately not used as a predicate offense because the clerk of that court was unable to locate certain records pertinent to the conviction. The defendant waived his right to trial by jury and elected to proceed with a bench trial. At trial, the state offered proof of the 1994 and 1995 convictions. A fingerprint expert matched the defendant's prints to the prints taken upon entry of the guilty pleas in the prior cases. Trooper Grigsby also testified extensively, regarding the facts of the present case, outlined above. Based upon all the evidence, the trial court found the defendant guilty of DWI, third offense. The defendant appealed his conviction and sentence, asserting numerous assignments of error.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that the trial court erred in finding him guilty of driving while intoxicated, third offense. He also argues that the trial court erred in denying his motion for a directed verdict of not guilty, based upon his claim of insufficiency of the evidence. These arguments are without merit.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.[1] La. R.S. 14:98 provides, in part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages....
Said another way, in order to convict an accused of driving while intoxicated, the prosecution need only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. It is not necessary that a conviction *463 of DWI be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish defendant's guilt. Intoxication is an observable condition about which a witness may testify. State v. Courtney, 30,629 (La. App.2d Cir.5/13/98), 714 So.2d 176.
Trooper Grigsby had several years of experience in law enforcement and had made numerous stops for DWI. The trooper saw the defendant driving erratically. When the defendant got out of his car, the trooper observed that the defendant was swaying from side to side as he walked and he had the odor of alcohol on his breath, which intensified when the defendant was later placed into the close confines of the patrol car. Also, the defendant had watery, bloodshot eyes and his speech was slurred.
Trooper Grigsby then administered several field sobriety tests to the defendant including the heel to toe walk, one leg stand and the HGN test. Trooper Grigsby testified that he had eight hours instruction and 24 hours practical application in the administration of field sobriety tests. Trooper Grigsby also testified at length about his experience in administering the tests, described what the tests measured and demonstrated that he knew of physical factors which could affect the outcome of the tests. Therefore, he was qualified to administer such tests. The defendant could not complete either of the physical field sobriety tests and his eyes did not track smoothly on the HGN test. The defendant complained of no physical impediment which would impair his ability to complete these tests.
The defendant cites State v. Kent, 610 So.2d 265 (La.App. 5th Cir.1992) in support of his argument that the evidence against him was insufficient to support his conviction in this case. In State v. Kent, supra, the defendant was stopped on suspicion of DWI and performed reasonably well on his field sobriety tests. In that case, the slight inadequacies in the defendant's performance could be attributed to nervousness. The defendant in Kent refused an Intoxylizer test, but requested a blood test. His request was denied. Based upon these facts, the court found the evidence insufficient to support a conviction for DWI. By contrast, in the present case, Mr. Inzina failed to adequately perform field sobriety tests and in one instance was unable to complete a test due to his unsteadiness. Mr. Inzina also failed to give adequate samples for an Intoxilyzer test, may have deliberately sabotaged the test, and did not request a blood test. Therefore, State v. Kent, supra, does not support the defendant's argument regarding the sufficiency of evidence in this case. The conclusion to be drawn from the facts presented here is inescapable. The defendant was driving while intoxicated.
In addition to establishing the elements for the instant offense of driving while intoxicated, the state must also prove that the defendant has two prior valid convictions as defined in La. R.S. 14:98(F)(1) and that these convictions are not stale under R.S. 14:98(F)(2). As is discussed more fully below, the defendant's prior convictions were valid under La. R.S. 14:98(F).

MOTION TO QUASH
The defendant argues that the trial court erred in failing to grant his motion to quash the predicate DWI offenses used against him to support his present conviction for third offense DWI. The defendant contends that both prior pleas were taken without an inquiry by the court prior to the acceptance of the pleas and the waiver of the right to counsel as to the defendant's literacy, competency, understanding and volition. Therefore, the defendant contends that the predicate offenses should be quashed. These arguments are without merit.
Regarding the defendant's 1994 conviction in docket number 94-M1041, the defendant entered an uncounseled guilty plea to DWI, first offense, in the Fourth Judicial District Court, Ouachita Parish. In his motion to quash the use of this conviction as a predicate offense, the defendant complains that the state failed to prove both adequate compliance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and failed to show a valid waiver of counsel. The trial court correctly denied the *464 defendant's motion to quash the use of this offense.
In State v. Jones, 404 So.2d 1192 (La.1981), the supreme court stated that, when a misdemeanor guilty plea will be used as a basis for actual imprisonment or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that he waives his right against compulsory self-incrimination, his right to trial and his right to trial by jury where applicable, and his right of confrontation. The court must also make sure that the accused has a full understanding of what the plea connotes and of its consequences.
Regarding the waiver of the right to counsel, the court in State v. Strain, 585 So.2d 540 (La.1991), stated that the judge should advise the defendant of his right to counsel and to appointed counsel if he is indigent. The judge should further determine on the record that the waiver is made knowingly and intelligently under the circumstances. Factors bearing on the validity of this determination include the age, education, experience, background, competency and conduct of the accused, as well as the nature, complexity and seriousness of the charge. According to Strain, the nature of the self-representation to be undertaken is also significant, since a layman obviously can more easily understand from a brief explanation by the judge the significance of a guilty plea than he can the significance of defending himself in a felony trial, with the latent dangers and pitfalls attendant thereto. However, the court also stated that determining the defendant's understanding of his waiver of counsel in a guilty plea to an uncomplicated misdemeanor requires less judicial inquiry than determining his understanding of his waiver of counsel for a felony trial.
Generally, the court is not required to advise a defendant who is pleading guilty to a misdemeanor of the dangers and disadvantages of self representation. The critical issue on review of the waiver of the right to counsel is whether the accused understood the waiver. What the accused understood is determined in terms of the entire record and not just by certain magic words used by the judge. State v. Strain, supra; State v. Lodrique 97-1718 (La.App. 1st Cir. 5/15/98), 712 So.2d 671; State v. Marcoux, 96 0453 (La. App. 1st Cir. 3/27/97), 691 So.2d 775, writ denied 97-1079 (La.6/13/97), 695 So.2d 984.
When the 1994 case was called for arraignment, the court informed the defendant that he had the right to appointed counsel and the defendant said "I don't want a lawyer." He also said, "I'd just like to settle it today if I can." Later that day, the court took up three DWI cases, including the defendant's, at the same time. After determining that the defendant wanted to plead guilty, the court engaged him in this exchange:
Q: First of all, I've talked to each of you about a lawyer before I brought you up here. Mr. Inzina, you indicated to me you want to give up your right to a lawyer to enter a plea of guilty. Is that correct?
A: Yes, sir.
Q: But you understand that you have a right to a lawyer. And that if you can't afford one, one will be appointed for you. Is that correct?
A: Yes, sir.
Q: And you're telling the Court you want to give up your right to a lawyer and enter a plea of guilty? The only other thing that's going to happen is that the other two charges [expired drivers license, improper lane usage] are going to be dismissed. Do you understand that?
A: Yes, sir.
Q: That's what you want to do?
A: Yes, sir.
Q: But you understand you could have a lawyer?
A: Yes, sir.
The court then heard the prosecution recite the factual basis for the defendant's plea and informed the defendant of the penalty range for DWI, first offense, and subsequent DWI convictions.[2] The court then informed the defendant that he had the right to a trial, to confront the witnesses against him and the privilege against self-incrimination. The *465 court found that the defendant understood that, based on the entire colloquy, he was giving up these rights.
In denying the motion to quash this predicate offense, the trial court extensively articulated the reasons for its ruling. The trial court found that the record of the 1994 guilty plea established that the defendant made a knowing and intelligent waiver of counsel and that he understood the consequences of pleading guilty. Citing State v. Nelson, 30,583 (La.App.2d Cir.10/9/97), 712 So.2d 136, the court indicated that the charge of DWI is not complex. As the Strain court stated, it is almost self-explanatory. Moreover, as in Strain, this defendant had previously been convicted of DWI. The transcript reveals that the judge who took Mr. Inzina's plea engaged him in several exchanges and had ample opportunity to observe his demeanor. With direct observation of the defendant in providing answers, the judge was in a position to assess the extent of inquiry necessary to determine the knowing, voluntary and intelligent waiver of counsel, as well as the guilty plea. State v. Strain, supra. Further, the defendant heard the judge's response to one of the other defendants who asked the judge "Is there anything that a lawyer could do for me that I can't do myself here?" The judge carefully went through the factual basis for the pleas of all the defendants and explained what the state would have to prove in order to convict them.
The facts of this case are distinguishable from those in State v. Walpole, 459 So.2d 172 (La.App. 2d Cir.1984), writ denied 462 So.2d 207 (La.1985) and City of Monroe v. Wyrick, 393 So.2d 1273 (La.1981), overruled by State v. Strain, supra, relied upon by the defendant. In those cases, there was little or no colloquy held personally with the defendant in determining whether a knowing, intelligent and voluntary waiver of the right to counsel was entered. Under the facts presented here, the defendant's waiver of counsel in his prior guilty plea was valid. In addition, the judge's extensive colloquy ensured that the defendant understood the consequences of his plea. Therefore, the motion to quash the use of the defendant's 1994 driving while intoxicated conviction as a predicate offense in this case was correctly denied.
Regarding the guilty plea in 1995 to DWI, first offense, entered in the Fourth Judicial District Court, the defendant was represented by counsel. The court advised the defendant that by pleading guilty he was giving up the right to trial, the right of confrontation and the privilege against self-incrimination. The defendant indicated that he understood he was forfeiting these rights. The factual basis for this plea included information that the defendant was driving with a blood alcohol level of .116%. The court did not inform the defendants of the penalty for DWI, first offense, but did explain the enhanced penalties for multiple offense DWI.
In denying the motion to quash the use of the plea as a predicate offense, the trial court in the present case correctly ruled that the 1995 plea met all of the requirements for use to enhance the current conviction. The court that took the defendant's plea carefully explained the rights relinquished by the plea. The only irregularity in the colloquy was the court's failure to explain the penalty range for DWI, first offense. However, this failure is not fatal. When the defendant pled guilty to the 1994 DWI offense, the penalty range for the offense was explained to him. Also, as noted in State v. Nelson, supra, although the transcript of a challenged prior guilty plea shows that the court did not advise the defendant of the sentencing range for DWI, first offense, where the defendant was advised of the consequences of the plea and the penalties for DWI, second offense, and subsequent driving while intoxicated convictions, logic dictates that the defendant knew the sentence to be imposed for this guilty plea would either be no more than or would be less than that which would be imposed for a subsequent conviction.[3] Similarly in the *466 present case, there is little doubt that Mr. Inzina, having at least two prior convictions for driving while intoxicated, fully understood the penalty for driving while intoxicated, first offense. Therefore, the trial court correctly denied the defendant's motion to quash the use of his 1995 plea of guilty to DWI.

REASONABLE SUSPICION
The defendant argues that the trial court erred in this case by finding "probable cause" to stop him. The defendant also argues that the trial court erred in denying his motion to suppress all evidence obtained against him as a result of the stop. In the trial court, the defendant argued that the stop was illegal because it was not based on reasonable suspicion that he had committed an offense. Pursuant to La.C.Cr.P. art. 703, the defendant filed a motion to suppress evidence obtained as the result of the traffic stop. The court considered the motion during the trial on the merits. After hearing the trooper's testimony, the court denied the motion, finding that there was reasonable suspicion of a traffic violation, based upon the trooper's direct observation.
In order to stop an individual in his automobile without a warrant, a police officer must have a reasonable suspicion that the individual has committed, or is about to commit, an offense, including the violation of a traffic regulation. La.C.Cr.P. art. 215.1 LA. ST.ANN. 94-0201 (La.5/6/94), 637 So.2d 1046; State v. Jackson, 629 So.2d 1374 (La. App. 2d Cir.1993); writ denied, 497 So.2d 311 (La.1986).
As stated above, Trooper Grigsby stopped the defendant because he observed the defendant cross over the fog line, out of his lane of travel, nearly striking a storm drain. This is a violation of La. R.S. 32:79 which provides, in part that, whenever any roadway has been divided into two or more clearly marked lanes for traffic, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
The defendant relies upon State v. Vaughn, 448 So.2d 915 (La.App. 3d Cir.1984), in which the third circuit found the deviation in Mr. Vaughn's driving to be so minor that the officer had no reasonable suspicion to stop the vehicle. The totality of the circumstances must be considered in determining whether there is requisite reasonable suspicion to justify an investigatory stop. State v. Branch, 30,733 (La.App.2d Cir.7/6/98), 714 So.2d 1277. In the present case, Trooper Grigsby had reasonable cause to stop the defendant for violation of La. R.S. 32:79. Although the area was poorly lit, the trooper testified that the fog line was clearly visible in his headlights. The curve where the incident occurred was gradual, and there was no evidence that the defendant had to swerve to avoid anything. After nearly running off the road, the defendant jerked his car back into the lane. By comparison with Vaughn, the trooper in this case had a clear recollection of the events and precisely described the actions of the defendant that led to the stop. There was also an increased potential for harm to pedestrians because of the busy nature of the area.
Under the circumstances, there was no unreasonable intrusion on the defendant's right to be free from governmental interference. The trooper had the right to warn or cite the defendant for driving in an erratic and potentially dangerous manner. Therefore, there was reasonable suspicion to stop the defendant. The defendant's arguments to the contrary are without merit.

PROBABLE CAUSE
The defendant argues that the trial court erred in finding that Trooper Grigsby had probable cause to arrest him for driving while intoxicated.[4] This argument is without merit.
*467 La.C.Cr.P. art. 213 provides, in pertinent part, that a peace officer may, without a warrant, arrest a person when the person to be arrested has committed an offense in his presence. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense. Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of the experience of reasonable people, not legal technicians. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. State v. West, 617 So.2d 1384 (La. App.2d Cir.1993); State v. Brown, 395 So.2d 1301 (La.1981).
The defendant contends that Trooper Grigsby's observations of him were not sufficient to convince him of the defendant's intoxication. The defendant relies upon Trooper Grigsby's answer to one question on cross-examination to support his contention that there was no probable cause for arrest. The trooper was asked what action he would have taken if the defendant had submitted a proper breath sample and the results on the Intoxilyzer indicated lower than .10% blood alcohol concentration. Trooper Grigsby responded that if that had occurred, he would have written the defendant a citation for improper lane usage and would not have arrested him for driving while intoxicated.
We find this exchange insufficient to establish that Trooper Grigsby was unsure that the defendant was intoxicated. As set forth above, Trooper Grigsby had reasonable suspicion to stop the defendant for a traffic violation. When the defendant exited his vehicle, he swayed when he walked, had slurred speech, had a strong odor of alcohol about his person, and had watery, bloodshot eyes. At that point, the trooper was justified in administering field sobriety tests. The defendant failed to perform satisfactorily on his field sobriety tests, leading to the conclusion that he was under the influence of alcohol. The defendant offered no other explanation for his appearance and performance on the field sobriety tests, such as a physical condition which would indicate that these circumstances were attributable to factors other than intoxication.
The defendant then attacks the use of the results of the field sobriety tests, complaining of their subjective nature, factors other than intoxication which can cause a positive result and lack of statutory standards for regulating the training and qualification of agents administering the tests. Contrary to the argument asserted by the defendant, these tests are standardized and are widely accepted. It was shown that Trooper Grigsby had been sufficiently trained to conduct these tests and to evaluate the results.
Trooper Grigsby testified that he based his decision to make the arrest upon the defendant's appearance, the nature of the violation, and the results of the standardized field sobriety tests. He also stated that he did not observe anything about the defendant while he was attempting to take the Intoxilyzer breath test that would change his opinion in any way regarding the defendant's intoxication. Therefore, we find that probable cause existed to arrest the defendant for driving while intoxicated.

PERMIT CARD
The defendant argues that the trial court erred in allowing into evidence Trooper Grigsby's permit card, showing that he was certified in the operation of the Intoxilyzer machine. The defendant objected to the introduction of the card because it had not been provided to him in discovery. This argument is without merit.
In his motion for discovery, the defendant sought examination of documents, tangible objects, tapes, examinations and tests. In its *468 response, the state provided copies of all discoverable documents, and also stated that it had physical evidence intended for use at trial that the defendant could inspect upon five days written notice.
At trial, Trooper Grigsby testified that he was certified to operate the Intoxilyzer. As evidence of that certification, the trooper presented a permit in the form of a card issued under the authority of La. R.S. 32:663. The state offered this card into evidence. The defendant objected on the grounds that the card had not been provided in discovery. The state contended that the card was physical evidence and that defense counsel never sought to review the physical evidence. The court overruled the objection and admitted the card.
The defendant has not shown, nor is there a plausible argument, that the court's admission of the trooper's permit card prejudiced the defendant in any way. No conclusion could be drawn from the breath testing, and the state did not attempt to rely upon the statutory presumption of intoxication. This assignment of error is without merit.

OBJECTION TO QUESTION
The defendant argues that the trial court erred in overruling an objection to a prosecution question to Trooper Grigsby which the defendant claims called for a conclusion and for speculation. This argument is without merit.
At trial, the prosecution asked Trooper Grigsby, "Based on your observation of Mr. Inzina, the results of the field sobriety test, and your past experience did you expect that Mr. Inzina would have a breath test over .1?" The trooper stated, "With the results of the standardized field sobriety test I can make the determination just based on the standardized field sobriety test and the score that in all probability his blood alcohol would have been over .10 grams percent or above."
On appeal the defendant argues that the question "sought to provide evidence scientific in nature, without the safeguards required for the admissibility of the Intoxilyzer 5000, and was improper and highly speculative." The prosecution contends that the question was proper redirect examination and was based upon a prior question posed by the defendant as to what action the trooper would have taken if a valid intoxylizer test showed the defendant's blood alcohol level to be below the legal limits. The prosecution also contends that the answer was admissible because of the trooper's experience in conducting field sobriety tests and then making scientific measurements with the Intoxilyzer.
The trooper testified that he could estimate the suspect's blood alcohol level was over .10 grams percent, based on the field sobriety tests. However, no specific testimony was adduced that the results of the one leg stand or the walk and turn test would allow the trooper to estimate an offender's blood alcohol concentration. Similarly, no evidence was presented that the trooper could estimate blood alcohol concentration from the horizontal gaze nystagmus test.
Under the facts presented by this case, the court did not err in admitting the testimony. The evidence was not introduced to prove that the defendant's blood alcohol level was at or above the legal limit. As stated above, the prosecution did not rely on the statutory presumption of intoxication. Rather, the evidence was offered to bolster the trooper's observations that Mr. Inzina was under the influence of alcohol, to explain why the trooper arrested Mr. Inzina and why he conducted the Intoxilyzer test. We also note that this was a bench trial, where the likelihood that the evidence would confuse the fact finder was greatly reduced. A trial judge, by virtue of his legal training, can disregard improperly admitted evidence which is possibly prejudicial. State v. King, 96-1303 (La.App. 3d Cir.4/2/97), 692 So.2d 1296.
Considering the limited purpose for which the evidence was admitted and because this was a bench trial in which the state was not relying upon the statutory presumption of intoxication, this assignment of error is without merit.

FINGERPRINT IDENTIFICATION
The defendant argues that the trial court erred in allowing the prosecution to *469 present evidence regarding his fingerprints affixed to the bills of information in the prior DWI convictions. As part of its proof that the defendant had two prior DWI convictions, the state introduced evidence that the defendant's fingerprints matched the prints on the bills of information for the two prior offenses. The defendant objected to the introduction of the bills of information into evidence for purposes of showing that he had been convicted of the prior offenses. The defendant complained that while the prints might show that he was the person charged with the prior offenses, they did not show that he was the person actually convicted. On appeal, the defendant continues to assert that the bills of information are not evidence of conviction and that it is possible that he was misidentified. This argument is without merit.
In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same. The state must additionally offer proof that the accused is the same person as the defendant previously convicted. City of Monroe v. French, 345 So.2d 23 (La.1977). Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. See State v. Westbrook, 392 So.2d 1043 (La.1980); State v. Curtis, 338 So.2d 662 (La.1976).
In this case, the docket numbers on both bills of information in the prior convictions match the docket numbers on the plea colloquies. The defendant's fingerprints appear on both bills of information as required by La.C.Cr.P. art. 871(B)(1)(a) which provides:
In every judgment of guilty of a felony or of one of the misdemeanors enumerated in Subparagraph (2) of this Paragraph, the sheriff shall cause to be affixed to the bill of indictment or information the fingerprints of the defendant against whom such judgment is rendered.
First offense DWI is an offense enumerated in Subparagraph 2.
The fact that the fingerprints on the bills of information were those of the defendant was established by the testimony of a fingerprint expert. In this case, the trial judge observed that the court in which both convictions were entered routinely followed the practice established in La.C.Cr.P. art. 871(B)(1)(a), in affixing the defendant's fingerprints to the bill of information after the conviction. Therefore, the state proved beyond a reasonable doubt that the defendant is the same person convicted in both prior offenses.

EXCESSIVE SENTENCE
The defendant argues that the trial court erred in imposing sentence with an improper pre-sentence report and in imposing an excessive sentence under the guidelines. He further contends that the trial court erred in considering inadmissible information in imposing sentence.[5] Although the defendant has restated his assignment of error in his brief, he has made no argument that his sentence was excessive. A mere restatement of an assigned error in brief without argument or citation of authority does not constitute briefing. This assignment is considered abandoned. U.R.C.A. 2-12.4; State v. Wade, 29,234 (La.App.2d Cir.4/2/97), 693 So.2d 195.[6] Were we to consider *470 this complaint, however, we would find that this sentence was not excessive and that the trial judge complied with La.C.Cr.P. art. 894.1.

ERROR PATENT
The defendant's brief contains only a bare restatement of his assignment of error that the trial court "erred in failing to notice and dismiss due to errors patent on the face of the record in these proceedings." The defendant has presented no argument concerning this assignment of error.
The defendant's meaning in making this assignment of error is far from clear. The scope of this court's review extends only to error assigned by the defendant and to such error which is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La. C.Cr.P. art. 920. To the extent this assignment requests review for error discoverable by mere inspection of the pleadings, it is unnecessary, since this court reviews the record for error patent in every criminal case. Our review of the record reveals an error patent on the face of the record which does not require reversal of the defendant's conviction and sentence.
We note that the trial court failed to give the defendant credit for time served under La.C.Cr.P. art. 880. The sentence is hereby amended to allow such credit. State v. Keys, 29,369 (La.App.2d Cir.5/7/97), 694 So.2d 1107, writs denied, 97-1387, 97-1497 (La.10/31/97), 703 So.2d 21.

CONCLUSION
For the reasons stated above, we affirm the conviction of the defendant, John Inzina, Jr. for driving while intoxicated, third offense. We also affirm the defendant's sentence, but amend the sentence to allow credit for time served.
AFFIRMED.
NOTES
[1] The reason for reviewing sufficiency of the evidence first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. If an appellate court reviewing a criminal conviction finds the evidence insufficient to support a guilty verdict, the constitutional protection against double jeopardy bars retrial of the defendant. Hudson v. Louisiana, supra: U.S. Const. Amend. V, XIV. All other issues in the case become moot. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975; State v. Hearold, 603 So.2d 731 (La.1992).
[2] Even though the pleas were taken in globo with other defendants, the trial judge in both prior cases addressed Mr. Inzina separately regarding the facts and his understanding of his rights.
[3] In State v. Anderson, 30,901 (La.App.2d Cir.08/19/98), 720 So.2d 355, this court rejected a guilty plea where there was no discussion of any possible consequences or connotations of the plea. In the present case and in State v. Nelson, supra, there was a showing that sufficient discussion was held on the record regarding the consequences of the plea. Therefore, the facts of the present case are distinguishable from those in State v. Anderson, supra.
[4] We initially note that the defendant did not squarely raise this question in his motion to suppress. However, in that motion he did complain that the trooper had no probable cause to "request or initiate any test having as its purpose to determine or indicate the condition of the defendant insofar as it relates to sobriety." Further, the facts underlying the question were presented at the hearing on the motion to suppress and at the hearing the defendant specifically raised the question of the trooper's probable cause to arrest. Accordingly, this court will consider the issue on appeal.
[5] We note that the defendant failed to file a motion to reconsider sentence.
[6] La. R.S. 14:98 D. (1) provides that if any portion of a sentence for third offense DWI is suspended, the court shall require the offender to participate in a court-approved substance abuse program and / or participate in a court-approved driver improvement program. The court suspended 3 years of the defendant's sentence but did not require participation in either of those programs. Although it appears that the defendant is in grave need of both programs, the omission of those requirements is an error favorable to the defendant. Because the state did not file a motion to reconsider sentence, this court will not correct the error on appeal. See State v. Dunn, 30,346 (La.App.2d Cir.2/25/98), 708 So.2d 512.