691 So.2d 775 (1997)
STATE of Louisiana
v.
Charles J. MARCOUX.
No. 96 KW 0453.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
*776 Dana Cummings, Baton Rouge, for State.
Leo J. Berggreen, Baton Rouge, for Defendant-Appellant Charles J. Marcoux.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
LOTTINGER, Chief Judge.
Relator, Charles J. Marcoux, was charged by bill of information with third offense driving while intoxicated (DWI). La. R.S. 14:98. Relator waived formal arraignment and pleaded not guilty. Thereafter, relator filed a motion to quash the bill of information and/or to suppress based on the alleged invalidity of one of the two predicate DWI convictions relied on by the state to enhance the instant DWI to a level three offense, i.e., an uncounseled December 17, 1990 guilty plea to first offense DWI in the Nineteenth Judicial District Court under docket No. 10-90-1756. On February 26, 1996, the district court conducted a hearing and denied the motion to quash and/or suppress. Thereafter, relator filed this writ application, seeking reversal of the district court's ruling on the motion. On May 30, 1996, we denied the application. Relator sought review of our decision through an application for supervisory writs with the Louisiana Supreme Court. Pursuant to the October 25, 1996, order of the Louisiana Supreme Court, this matter was remanded to us for briefing, argument and an opinion. See State v. Marcoux, 96-1705 (La.10/25/96); 681 So.2d 348.
*777 At the February 26, 1996 hearing before the district court, counsel for relator and the prosecutor introduced into evidence three joint exhibits pertaining to the challenged December 17, 1990 DWI predicate guilty plea, i.e., copies of the court minutes, transcript of arraignment and a guilty plea-rights waiver form. The sole issue presently before us is whether or not relator knowingly and intelligently waived his right to counsel when he entered this contested predicate misdemeanor guilty plea.
Relator argues that the challenged misdemeanor predicate guilty plea is invalid and cannot be used to enhance the instant DWI charge because the predicate plea was entered without assistance of counsel and a knowing and intelligent waiver of the right to counsel. Thus, relator concludes that the district court erred by denying his motion to quash and/or suppress.
An uncounseled DWI conviction may not be used to enhance punishment of a subsequent offense, absent a knowing and intelligent waiver of counsel. State v. Lawrence, 600 So.2d 1341, 1342 (La.App. 1st Cir. 1991). When an accused waives his right to counsel in pleading guilty to a misdemeanor, the trial court should expressly advise him of his right to counsel and to appointed counsel if he is indigent. State v. Fritcher, 95-0124, p. 3 (La.App. 1st Cir. 4/4/96); 672 So.2d 295, 296. The court should further determine on the record that the waiver is made knowingly and intelligently under the circumstances. Factors bearing on the validity of this determination include the age, education, experience, background, competency, and conduct of the accused, as well as the nature, complexity, and seriousness of the charge. Determining the defendant's understanding of his waiver of counsel in a guilty plea to an uncomplicated misdemeanor requires less judicial inquiry than determining his understanding of his waiver of counsel for a felony trial. State v. Strain, 585 So.2d 540, 543-44 (La.1991), affirming 573 So.2d 517 (La.App. 1st Cir.1990). Generally, the court is not required to advise a defendant who is pleading guilty to a misdemeanor of the dangers and disadvantages of self-representation. See State v. Strain, 585 So.2d at 543; State v. Lawrence, 600 So.2d at 1343.
The critical issue on review of the waiver of the right to counsel is whether the accused understood the waiver. What the accused understood is determined in terms of the entire record and not just by certain magic words used by the judge. State v. Strain, 585 So.2d at 543; State v. Fritcher, 95-0124 at p. 3; 672 So.2d at 296.
The transcript of the December 17 Boykin hearing at which the contested predicate plea was tendered reflects that at the beginning of the hearing relator acknowledged to the trial court that he had filled out the guilty plea-rights waiver form. The court and relator then engaged in the following exchange:
Q. Do you understand D.W.I. carries a maximum jail sentence of up to six months in jail, a fine of up to five hundred dollars, or both. It carries a minimum mandatory sentence of ten days in jail, two of which cannot be suspended. I can substitute community service but they cannot be suspended. But more importantly, D.W.I. is the type of offense that every time you're arrested and convicted for it, the penalty is enhanced. Where first and second offense D.W.I. is a misdemeanor, third or multiple offense D.W.I.'s are felonies. If you plead guilty in [sic] this charge today, and I accept that plea of guilt or if you're subsequently convicted on this charge, then you're in line to be charged as a multiple offender should you ever be rearrested for D.W.I. in the future. Do you understand that?
A. Yes, sir.
Q. All right, because of that it is my duty to inform you that you have a right to be represented by an attorney. If you cannot afford an attorney and I deem it necessary that you have one, I'll appoint one at little or no expense to you. Do you understand that?
A. Yes, sir.
Q. Do you want to waive your right to an attorney and represent yourself in this matter? Is that what you want to do?
A. Uhyes, sir, I believe so.

*778 Q. All right, now, you understand you also have a right to go to trial in this case. During the course of that trial, you have the right to confront and cross-examine the witnesses called to testify against you. You have a right to appeal my decision should you try this case and lose it, and you have a right against self-incrimination. By entering a plea of guilty today, you're going to be giving up and waiving each one of these rights. Do you understand that, sir?
A. Yes, sir.
The court then inquired as to whether or not relator understood the guilty plea-rights waiver form. Relator affirmatively answered that he understood the form. The court asked relator if he had signed the second page of the form in the space marked defendant. Relator responded that he had not yet done so. The court then instructed relator to sign the form in the designated space and stated that the form was being marked and filed into the record of the predicate guilty plea.
Before accepting relator's guilty plea to the contested predicate offense, the trial court further questioned relator as follows:
Q.... What is your educational background, Mr. Marcoux?
A. Uhdiesel mechanic.
Q. How far have you gone through school, formally?
A. Excuse me?
Q. How far have you gone through school? How manyhave you gone through high school?
A. Uhtenth grade.
Q. Tenth grade. Can you read and write well, sir, and do you understand the nature of this procedure against you today?
A. Yes, sir.
The two-page, signed, guilty plea-rights waiver form states on page one, in pertinent part: "I KNOW THAT I HAVE THE RIGHT TO AN ATTORNEY, AND IF INDIGENT, THE RIGHT TO FREE ATTORNEY, WHO WILL REPRESENT ME DURING THE TRIAL AND ON APPEAL." Additionally, a designated space on page two of the form immediately preceding item 3, which states: "I WISH TO REPRESENT MYSELF." is filled in with a handwritten "X" and is followed by the date and signature of relator.
In this writ application, relator makes several specific assertions and/or arguments. He argues that, when the court accepted the contested predicate guilty plea, the court made no inquiry as to whether or not relator was indigent or whether or not relator could afford counsel. Relator asserts that his answer to the court's inquiry as to whether or not he wished to waive counsel and represent himself indicated "some doubt" and "demonstrates some hesitancy" by relator, since his answer was "Uhyes, sir, I believe so." Consequently, relator argues that because of that answer the trial court had a duty to further inquire into his waiver of the right to counsel (as to whether or not relator knew, understood, and wanted to waive the right to counsel) and that no such further inquiry was ever undertaken by the trial court. Relator also argues that, at the time he made the alleged waiver of his right to counsel, the court had not yet made any inquiry concerning relator's literacy, competency, understanding or volition and that no such inquiry was made until after the alleged waiver of the right to counsel. Finally, relator asserts that the record of the predicate plea does not clearly show the court made sure that relator had a full understanding of what the plea meant and its consequences and that the court did not inform him of the consequences of proceeding without counsel.
After carefully reviewing the Boykin transcript of the challenged predicate guilty plea and the signed guilty plea-rights waiver form,[1] we concur in the district court's ruling *779 denying relator's motion to quash and/or suppress.
While we strongly encourage and find it clearly preferable for a trial court to inquire into factors bearing on the validity of the waiver of the right to counsel before eliciting a waiver of the right to counsel, the validity of the waiver of the right must be determined on the basis of the entire record and not just factors that may have been brought out by the trial court prior to the court's acceptance of the waiver. Thus, although it would have been preferable for the trial court to obtain information from relator concerning his educational level and ability to read and write before eliciting relator's waiver of counsel, that information was in fact obtained on the record and, thus, must be considered together with other pertinent factors present in the record in determining whether or not relator understood the waiver.
The trial court began the December 17 colloquy by fully advising relator of the maximum and minimum jail sentences for a first offense DWI and that for subsequent DWI convictions relator faced enhanced penalties. In response to direct questioning by the trial court, relator clearly indicated he understood that advice. The court clearly informed relator of relator's right to be represented by an attorney and that, if relator could not afford counsel and the court deemed it necessary, the court would appoint counsel at little or no cost to relator. When asked by the court if he understood the foregoing advice, relator replied in the affirmative. The court then inquired as to whether or not relator wanted to waive his right to an attorney and represent himself. Relator responded: "Uhyes, sir, I believe so." The guilty plea-rights waiver form bearing relator's signature bolsters relator's oral response to the court. The guilty plearights waiver form states: "I KNOW THAT I HAVE THE RIGHT TO AN ATTORNEY, AND IF INDIGENT, THE RIGHT TO FREE ATTORNEY, WHO WILL REPRESENT ME DURING THE TRIAL AND ON APPEAL." Additionally, the guilty plearights waiver form bears an "X" in the appropriate space preceding the statement, "I WISH TO REPRESENT MYSELF." The waiver form further reveals that relator was twenty-eight years old at the time he pleaded guilty to the December 17 predicate offense. Before accepting the plea, the trial court advised relator of his right to trial, rights to confrontation and cross-examination, privilege against self-incrimination, right to appeal and that by pleading guilty relator was waiving each of these rights; and, when asked by the court if he understood that advice, relator answered in the affirmative. Additionally, in response to direct questioning by the court, relator further stated that he was a diesel mechanic with a tenth grade level education, that he could read and write well, understood the nature of the proceedings against him, and had filled out the guilty plea-rights waiver form and understood the form.
With all of this information and through direct observation of relator in providing that information, the trial court was in a position to assess the extent of inquiry necessary to determine the knowing, intelligent and voluntary nature of the waiver of counsel, as well as of the guilty plea. Notwithstanding relator's assertions to the contrary, in order to properly advise relator of his right to counsel, the trial court was not required to make a determination of whether or not relator was indigent but only to advise relator of his right to counsel and to appointed counsel if he could not afford counsel.[2]
Based on the entire record, we conclude that the trial court adequately determined that relator's waiver of the right to counsel at the time of entry of the December 17 predicate plea was made knowingly and intelligently, and that this determination was not flawed by the court's failure to advise relator of the pitfalls of self-representation. As a *780 result, we find that the motion to quash and/or suppress was correctly denied.
For the foregoing reasons, we maintain our original denial of this writ application, affirming the district court's ruling.
WRIT DENIED.
NOTES
[1] See State v. Santiago, 416 So.2d 524, 526 (La. 1982); State v. Tucker, 405 So.2d 506, 509 (La. 1981): State v. Dunn, 390 So.2d 525, 527 (La. 1980); State v. Lawrence, 600 So.2d at 1346; State v. Stemley, 618 So.2d 455, 457-458 (La. App. 4th Cir.), writ denied, 623 So.2d 1305 (La. 1993), cases in which guilty plea-rights waiver forms were considered on appellate review in determining whether or not a challenged predicate conviction was tendered with an express and knowing waiver of constitutional rights.
[2] We note that a determination of whether or not an accused is indigent and entitled to appointed counsel as an indigent becomes necessary when the accused elects to avail himself of the right to counsel and requests appointment of counsel, a situation which never arose at the time the contested predicate plea was tendered, since relator was choosing self-representation and waiving the right to counsel.