hNORRIS, Chief Judge,
dissenting.
For the reasons expressed below, I respectfully dissent from the majority opinion and would reverse.
It is well established that an uncoun-seled DWI conviction may not be used to enhance punishment of a subsequent offense, absent a knowing and intelligent waiver of counsel. State v. Deroche, 96-1376 (La.11/8/96), 682 So.2d 1251, 1252 (un-counseled misdemeanor convictions may not serve as the predicate for enhancement of a subsequent DWI offense); State v. Pugh, 588 So.2d 702 (La.1991) (same); State v. Gable, 614 So.2d 808, 809 (La.App. 2d Cir.1993); State v. Deshotel, 98 0730 (La.App. 1st Cir. 2/23/99), 730 So.2d 994, 996. In the absence of a valid waiver, before a court may accept an uncounseled plea to a misdemeanor offense, it must expressly advise the accused of his right to counsel and to appointed counsel if he is indigent, and determine, “on the record that the waiver is made knowingly and intelligently under the circumstances.” State v. Stevison, 97-3122 (La.10/30/98), 721 So.2d 843; Deroche, supra, at 1252; State v. Strain, 585 So.2d 540, 543 (La.1991).
When a defendant enters an uncoun-seled guilty plea to DWI, the trial court must advise him specifically of the “dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice [to forgo the assistance of counsel] is made with open eyes.” State v. Burford, 32,099 (La.App.2d Cir. 6/16/99), 738 So.2d 1158; State v. Graham, 513 So.2d 419 (La.App. 2d Cir.1987). While it is true that the Supreme Court reasoned in Strain that determining a defendant’s understanding of his waiver of counsel in a guilty plea to an uncomplicated misdemeanor requires less judicial inquiry than in a felony trial, the critical issue on review nevertheless is whether the record reflects that the accused understood the waiver. State v. Inzina, 31,439 (La.App.2d Cir. 12/9/98), 728 So.2d 458, 464; State v. Marcoux, 96 0453 (La.App. 1st Cir.3/27/97), 691 So.2d 775, writ denied, 97-1079 (La.1997), 695 So.2d 984.
Factors bearing on determining an accused’s capacity to understand a waiver of counsel include, but are not limited to the age, education, experience, background, competency, and conduct of the accused, as well as the nature, complexity, and seriousness of the charge. State v. Stevison, supra; State v. Marcoux, supra. Most importantly, although the Louisiana Supreme Court has eschewed any particular formula which must be followed by the trial court, “in order to establish a valid waiver of the right to counsel at trial, there must be sufficient inquiry (preferably by an interchange with the accused *371 that elicits more than ‘yes’ and ‘no’ responses) to establish on the record a knowing and intelligent waiver under the overall circumstances.” State v. Strain, supra; State v. Stevison, supra; State v. Bell, 381 So.2d 393 (La.1980).

The 1997 Plea

Although the court minutes indicate that McKinney was represented by James M. Miller at his February 11, 1997 plea to DWI, second offense, Miller did not, in fact, act as his attorney, but rather as an arm or friend of the court who was enlisted by the court simply to advise all the indigent defendants present that day of their Boykin rights prior to pleading guilty. The majority’s conclusion otherwise simply does not comport with the record. Miller testified that at the time of McKinney’s arrest, he was employed by the Indigent Defender Board of the 5 th Judicial District and was appointed to represent McKinney at jail-call on December 3, 1996. He testified that McKinney bonded out before jail-call, thereby terminating his appointment. Miller clearly testified that it was his understanding that he had no further obligation to represent McKinney and that his appointment was “null and void”; his records confirm that he took no further action on McKinney’s behalf. The majority opinion simply disregards this Istestimony.
Although the court minutes and transcript indicate that he was physically present, Miller had no recollection of representing McKinney in any capacity at his February 11, 1997 arraignment. Miller did describe in detail the common practice utilized in the 5111 Judicial District to process misdemeanor DWI offenders. On arraignment days, at the behest of the court, the IDB attorney assigned to that courtroom would sound the courtroom for misdemeanor DWI and possession of marijuana defendants and gather them in a side room. Once all the defendants had gathered into this room, the IDB attorney, in this instance, Miller, would speak to them en masse, explaining to them, as a group, their Boykin rights, the penalties for the offenses with which they were charged, and their exposure to enhanced penalties for future convictions. After this, the attorney would read the arraignment list to determine which defendants desired to plea guilty; those who did were returned to the courtroom for the entry of their pleas. Miller testified that it was uncommon to discuss the merits of each individual case or, in the case of a second or third offender, to have the record of prior Boy-kin pleas available for scrutiny. Miller did not, as the majority claims, testify that the “attorney evaluated the validity of prior pleas.” In fact, the specifics of any case, or possible defenses, would be discussed only if a defendant brought them up, which seldom happened. Following this practice, Miller testified that he and the other IDB attorneys typically did not file any discovery or any other motions; in McKinney’s case, none were filed. Miller further testified that at this short group meeting, which could include as many as 25 defendants at one time, other individuals, such as attorneys and deputy sheriffs, sometimes were present in the room.
In sum, Miller testified that he believed, in accordance with what he perceived to be the instructions of the district court, and in conformity with the practice of the other 5 th District IDB attorneys, that his sole obligation to |4McKinney and the other misdemeanor defendants was to advise them of their Boykin rights prior to the court’s on-the-record recitation of the same rights. He was, according to his understanding, not appointed to counsel or otherwise represent them before the court as an attorney, and he acted accordingly. As such, the majority’s statement that “it is clear that the lawyers were also aware that part of their job as indigent defenders extended to the representation of these misdemeanor defendants” likewise lacks factual basis in the record.
The transcript of the guilty plea and court minutes indicate that Miller was present with McKinney and nine other *372 defendants who had chosen to plead guilty to a variety of offenses, including DWI first and second offense, as well as possession of marijuana. The court advised this group of their Boykin rights for a second time, the penalties on the charges they faced, and the increased penalties that could result if the defendants were subsequently charged with DWI or possession of marijuana. The court then briefly addressed each defendant, including McKinney, in turn:
Court: This is Mr. McKinney? Mr. McKinney, did you hear and understand your rights and the enhanced penalties that I read to you?
Mr. McKinney: Yes, sir.
Court: Understanding your rights and the enhanced penalties, do you still wish to waive your rights and plead guilty to DWI, second offense, today?
Mr. McKinney: Yes, sir.
Thus, from the record, it appears that, both the court and McKinney were misled as to Miller’s role in the proceeding. Miller did nothing more than introduce each defendant to the court when called, which comports with his later testimony that he did not perceive his role to be an advocate for each defendant. As such, I would conclude that McKinney was not represented by counsel at his February 11, 1997 plea.
In addition, although he appeared without appointed counsel, at no time did |5the court advise McKinney, or elicit a waiver of his right to counsel at arraignment and sentencing, although the trial court properly advised the defendants of their right to an attorney at trial. Moreover, the district court made no attempt to determine McKinney’s literacy, competency, understanding, and volition to enter an un-counseled guilty plea other than eliciting “Yes, sir” and “No, sir” responses to all questions. From this limited colloquy, it is impossible to ascertain McKinney’s ability to defend himself, his literacy, competency, understanding, and volition. State v. Stevison, supra; State v. Bell, supra; City of Monroe v. Wyrick, 393 So.2d 1273 (La. 1981); see also State v. Lambert, 97-64 (La.App. 3d Cir. 9/30/98), 720 So.2d 724.
In State v. Deroche, supra, the Louisiana Supreme Court rejected an analogous guilty plea wherein the trial court canvassed an uncounseled defendant with regard to his trial rights but did not elicit an explicit waiver of counsel for the guilty plea. Similarly, in State v. Strain, 585 So.2d 540 (La.1991), the court rejected a defendant’s uncounseled plea where the trial court accepted the plea without any recorded inquiry into his capacity to make a knowing and voluntary waiver of his right to counsel. Under these .circumstances, the record does not support a finding of either an implicit or explicit waiver of the Sixth Amendment right to counsel. State v. Gable, supra. In fact, at oral argument, counsel for the state admitted that no waiver was sought.
On these facts, the February, 1997 plea was an uncounseled plea unaccompanied by a waiver of counsel on the record; it cannot, therefore, be used as a predicate offense for the purpose of enhancing the penalties of the instant case. The district judge merely canvassed McKinney with regard to some of the trial rights he was waiving, but failed to mention a waiver of right to counsel at his plea or otherwise inquire into his capacity to waive his right to the assistance of counsel in making the decision whether to go to trial, “[t]he principal function of a | Jawyer for an accused who desires to plead guilty.” Strain, 585 So.2d at 543. Thus, the record does not establish a valid waiver of counsel and the guilty plea may not serve as predicate for enhancement of a subsequent DWI offense. State v. Pugh, 588 So.2d 702 (La.1991); State v. Wiggins, 399 So.2d 206 (La.1981); State ex rel. Bishop v. Blackburn, 384 So.2d 406 (La.1980).

The 1991 Plea

The minutes and transcript of the guilty plea entered on February 20,1991 indicate that McKinney was purportedly represented by Mr. Donnie L. Ellerman, another *373 IDB attorney. Although Ellerman was not called to testify at the hearing on the motion to quash, the State stipulated that the same procedure described by Miller would apply as in McKinney’s 1997 plea. This alone is sufficient to reject the 1991 as a predicate offense.
Additionally, the court transcript from the 1991 proceeding, like that of the 1997 plea, indicates although the court advised the defendants, en masse, of their Boykin rights, the court did not elicit a waiver of counsel for the purposes of the guilty plea, or even mention that McKinney had a right to counsel. In addition, similar to the 1997 plea, the court made no inquiry into McKinney’s capacity to enter an un-counseled guilty plea, and only a brief “Yes” and “No” exchange with the court:
Court: Mr. McKinney, would you please step up to the microphone. Mr. McKinney, did you understand your rights that I explained to you?
Mr. McKinney: Yes, sir.
Court: Did you understand the enhanced penalties?
Mr. McKinney: Yes, sir.
Court: Understanding the enhanced penalties and your rights, do you still desire to plead guilty to the charge of DWI first offense?
Mr. McKinney: Yes sir.
Accordingly, for the same reasons that I would reject the 1997 plea for the |7purposes of enhancement, I would reject the 1991 plea.

Ineffective Assistance of Counsel Claim

Even if a waiver of counsel could be concocted from these events, the “representation” provided by Miller and Eller-man fell far short of that which is constitutionally required, for neither attorney made any effort or attempt to represent McKinney’s interests, or even consult with the file or McKinney individually before the proceedings. Accordingly, I have grave doubts as to the efficacy of these pleas, for despite the formal appointment of counsel, the total absence of any assistance to the client is arguably a constructive denial of counsel, which is legally presumed to result in prejudice. Tucker v. Day, 969 F.2d 155, 158 (5th Cir.1992)(citing Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940))(“The Constitution’s guarantee of assistance of counsel cannot be satisfied by mere formal appointment”); United States v. Cronic, 466 U.S. 648, 654 n. 11, 104 S.Ct. 2039 2044 n. 11, 80 L.Ed.2d 657 (1984)(“[A]lthough counsel is present, the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided”); see also, State v. Green, 31,839 (La.App.2d Cir. 9/22/99), 752 So.2d 986. In fact, the United States Supreme Court, in parsing the text of the Sixth Amendment, has observed that “If no actual ‘Assistance’ ‘for’ the accused’s ‘defense’ is provided, then the constitutional guarantee has been violated.” Cronic, 466 U.S. at 654, 104 S.Ct. at 2044 (footnote omitted). The majority opinion simply disregards this well-established jurisprudence.
Moreover, the manner in which these attorneys “counseled” these defendants— en masse, in a non-confidential surrounding — gravely undermines the Constitutional guarantee of counsel. Miller testified that he did not further investigate the efficacy of a prior conviction or even inquire into a defendant’s case unless the defendant brought it up himself in front of the group. Incredulously, however, the majority finds no problem with this constructive | «denial of one of our most basic rights. As such, I would reverse the conviction for DWI, third offense, and find McKinney guilty of DWI, first offense, and remand for resentencing.