STATE OF LOUISIANA
v.
MICHAEL ANTHONY CARRERE.
No. 2007 KA 1432.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
JOSEPH WAITZ, District Attorney, JAY J. LUKE, Assistant District Attorney, Counsel for Appellee, State of Louisiana.
BERTHA M. HILLMAN, Louisiana Appellate Project, Counsel for Defendant/Appellant, Michael Anthony Carrere.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
HUGHES, J.
The defendant, Michael Anthony Carrere, was charged by bill of information with driving while intoxicated (DWI), fourth offense, a violation of LSA-R.S. 14:98. The defendant pled not guilty. The defendant filed a motion to quash, challenging two of his predicate DWI offenses, wherein he pled guilty.[1] Following a hearing, the motion to quash was denied. The defendant was rearraigned at a Boykin[2] hearing and entered a plea of guilty under State v. Crosby, 338 So.2d 584 (La. 1976), preserving his right to appeal the court's denial of the motion to quash. The court sentenced the defendant to ten years at hard labor and imposed a $5,000 fine. The defendant now appeals, asserting one assignment of error. We affirm the conviction and sentence.

FACTS
Because the defendant pled guilty, the facts were not developed. At the Boykin hearing on July 13, 2006, the defendant pled guilty to driving while intoxicated, fourth offense, on December 8, 2005.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues that the court erred in denying his motion to quash a predicate offense. Specifically, the defendant contends that one of his DWI offenses listed in the bill of information should have been quashed because his waiver of counsel was not knowingly and voluntarily made. The defendant also contends the court erred in not finding him indigent at the time of this guilty plea.
An uncounseled DWI conviction may not be used to enhance punishment of a subsequent offense, absent a knowing and intelligent waiver of counsel. When an accused waives his right to counsel in pleading guilty to a misdemeanor, the trial court should expressly advise him of his right to counsel, and to appointed counsel, if he is indigent. The court should further determine on the record that the waiver is made knowingly and intelligently, under the circumstances. Factors bearing on the validity of this determination include: the age, education, experience, background, competency, and conduct of the accused, as well as the nature, complexity, and seriousness of the charge. While the judge need not inquire into each and every factor set forth above, to establish a valid waiver of the right to counsel there must be sufficient inquiry to establish on the record a knowing and intelligent waiver under the overall circumstances. Whether an accused has knowingly and intelligently waived his right to counsel is a question that depends on the facts and circumstances of each case. State v. Strain, 585 So.2d 540, 542 (La. 1991).
Generally, the court is not required to advise a defendant, who is pleading guilty to a misdemeanor, of the dangers and disadvantages of self-representation. Misdemeanors do not carry the same consequences or the same societal stigma as felonies. Uncounseled defendants, through lack of knowledge, sometimes plead guilty, even though an error by the arresting officer or in the testing equipment would have rendered the charge invalid. However, when the misdemeanor is, in the vast majority of cases, automatically used to enhance a subsequent violation to the felony level, the advice should reflect this danger, that is, an error in self-representation on the first DWI can have severe consequences in subsequent arrests. See State v. Deshotel, 98-0730, p. 4 (La. App. 1 Cir. 2/23/99), 730 So.2d 994, 996-97.
The guilty plea at issue involved a DWI first offense committed on October 15, 2000 (Docket Number XX-XXXX-XX-XX-XX, Terrebonne Parish, City Court of Houma). The Boykin hearing on this matter was January 2, 2001. The defendant argues that after he indicated to the court that he wanted an attorney, the court should not have taken his guilty plea without allowing him to consult with an attorney.
During the Boykin hearing, the court asked the defendant if he had any questions that he would like to talk to an attorney about, to which the defendant replied, "Yes, I would." A complete reading of the relevant part of the transcript indicates that the court was prepared to allow the defendant time to speak with an attorney. The defendant explained to the court that the only reason he wanted to speak to an attorney was that he was afraid of being incarcerated for not having money to pay the fine. The judge explained to the defendant that he did not put people in jail for not having money. After further discussion, the defendant pled guilty.
The defendant and one other person, both in proper person, were Boykinized at the January 2, 2001 hearing. Prior to the court addressing the defendant personally about his particular charges, the court thoroughly explained to the defendants all of their rights, including the right to counsel, and that a guilty plea meant a waiver of those rights. The court specifically informed the defendants of the benefits of having an attorney and that, if they could not afford an attorney, one would be appointed to them at no cost, stating:
You need to understand, first of all, that if you had any questions whatsoever concerning any of this stuff, you have the right to be represented  to be advised  by an attorney. Now the benefit of having an attorney of course, is for you to discuss the case, to obtain advice, to determine whether or not you have any defenses to the charge. If you pled Not Guilty or Not Guilty by Reason of Insanity, then of course the lawyer would assist you at your trial in asserting any defenses, and basically, to see to it that if in fact you are convicted, that that conviction is based upon competent evidence and the following of the proper procedures. Under normal circumstances, you're required to hire an attorney of your choice. If you were indigent, which has to do with the amount of income that you have, then an attorney would be appointed to represent you at no cost to you.
The court informed the defendants of the sentences and the fines for a first, second, third, and fourth offense DWI. The court explained to them that a prior DWI could be used against them.
After having spoken to the defendants collectively, the court personally addressed the defendant. Following is the relevant portion of the colloquy between the court and the defendant regarding the request for counsel:
Q. Mr. Carrere, . . . Do you think you understand what you are charged with?
A. Yes, sir.
Q. The second question: Do you think you understand the brief explanation I just gave you?
A. Yes, sir.
Q. Thirdly: Do you have any questions that you would like to talk to an attorney about?
A. Yes, I would.
Q. How much more time is it going to take you to talk to a lawyer, understanding that you've had since October 14th[?]
A. I really don't know. I've been trying to get me a job and everything, and I can't afford an attorney at the moment.
Q. You're not working?
A. No, not really  part time; every now and then I get a job  doing a little paint work.
Q. What type of work do you normally do?
A. Siding  stucco  plastering.
Q. It seems a little puzzling.
A. Excuse me....?
Q. It seems a little puzzling to me, because with real estate and construction being the way it's going on, I would think you could have a thousand jobs.
A. Not at the moment.
Q. When was the last time you actually worked?
A. I did a job about two days ago.
Q. And how long did that last?
A. Just one day.
Q. One day? And that's the last time you worked?
A. I've been in the treatment center for the last 40 days; I've been out for about two weeks now.
Q. Well, I'm not going to declare you an indigent, but I'm going to allow you to come back at 1:30, so you can talk to an attorney about the matter, and if appropriate, I'll appoint him to represent you. Come back about 1:30 and you can talk to Mr. Levy.
A. Excuse me. Do I have to make a plea today?
Q. I thought you wanted to talk to an attorney, and I generally interpret that to mean that the person would like to talk to a lawyer before they make their plea. I might be simplistic, but it seems to me that before you decide how you want to plead, you'd want to get advice about how you want to plead, and not afterwards. Am I misunderstanding?
A. I'm just in a situation where I would make my plea, but I really don't have the money to pay the fine at the moment. That's the only thing I'm kind of scared about at the moment  I don't really want to get incarcerated for not having the money.
Q. I don't put people in jail for not having money. Let me tell you about my general practice. People put themselves in jail for not complying with their responsibilities.
A. Yes, sir.
Q. But, let me explain to you what my practice is: My practice is that if a person pleads guilty, then we set up a payment schedule with them, as best as they can afford to pay, and we take it from there. If you pled, like I said, you would have a requirement to either comply with that statute about home incarceration  and I'd give you time to do it  and go to the clinic and do some other stuff.
A. I've been complying with the clinic I've been going to.
Q. I know you have. So would you or would you not want to talk to a lawyer?
A. If I was given time to make arrangements on payments I would change my plea.
Q. Well I don't think you've ever pled, but if that's your concern, you shouldn't worry about it, because very seldom do people when they come to court have money to pay, and if I did that nobody would plead and the jail would be full of people[.] What we generally do is we try to set up some sort of payment schedule with what people can afford. In your case, anticipating that maybe at some point you can get back to work, but you also need to understand my focus. Since you're going to the clinic and stuff like that, I would really put that at the top of your totem pole, as it were, to where you know, you need to comply with all of that, and everything else just ought to follow. So my first concern would be to see to it that you continue on to the clinic and comply with all of their rules and regulations, in an attempt to maintain sobriety.
A. I'm doing that faithfully.
Q. So how do you want to plead?
A. I'll plead guilty to the charge.
Q. And do you understand that by pleading guilty you're waiving the rights I just explained to you?
A. Yes, sir.
Q. How old are you?
A. Thirty-three.
Q. And when you went to school, what grade did you go to?
A. I went to the 9th.
Q. And you understand the English language?
A. Yes, sir.
The defendant also signed an "Explanation of Rights" form. The form stated in pertinent part:
You have the right to be represented by an attorney. If you cannot afford an attorney, an attorney will be appointed to represent you at no cost to you. The benefit of having an attorney is to obtain advice; to discuss your cas[e] to determine if there are any defenses to the charges; to aid you in asserting these defenses; to assist you at your trial; to advise you how to plead and to see that if you are convicted, that conviction is based upon competent evidence.
The defendant suggests that the court accepted his guilty plea without inquiring into his age, education, and "mental condition." However, a reading of the above excerpt indicates the court did ask the defendant his age and level of education. Regarding the defendant's competence, following its colloquy with the defendant, the trial court stated:
Have the minutes reflect that based upon my brief talk today with Mr. Carrere, my observation of him, his response to my questions, I believe Mr. Carrere is competent, has what I call a lay person's understanding concerning his legal rights. I think he understands that by pleading he's waiving those rights. I will accept his plea, since I find it to be freely, knowingly, voluntarily, and intelligently made.
The critical issue on review of the waiver of the right to counsel is whether the accused understood the waiver. What the accused understood is determined in terms of the entire record and not just by certain magic words used by the judge. State v. Marcoux, 96-0453, p. 3 (La. App. 1 Cir. 3/27/97), 691 So.2d 775, 777, writ denied, 97-1079 (La. 6/13/97), 695 So.2d 984. The record before us clearly indicates that the court thoroughly explained to the defendant his right to counsel and that, if he pled guilty, he would be waiving that right. Further, the defendant read and signed a form indicating his right to counsel and that if indigent, an attorney would be appointed to represent him. The defendant specifically indicated to the court he understood that by pleading guilty, he was waiving the rights just explained to him. While the defendant initially indicated he wanted to talk to an attorney regarding the singular issue of his inability to pay a fine, the ensuing discussion with the court assuaged the defendant's concerns, which eliminated the need to talk to an attorney regarding that issue. We find that, after considering everything that appears in the entire record, and noting the court's opportunity to observe the defendant's appearance, demeanor, and responses in court, the defendant's waiver of counsel was knowingly and intelligently made. See State v. Lodrigue, 97-1718, pp. 6-7 (La. App. 1 Cir. 5/15/98), 712 So.2d 671, 674.
The defendant also asserts that the court erred in not finding him indigent at the time of his predicate guilty plea. This assertion is baseless. The determination of whether or not an accused is indigent and entitled to appointed counsel as an indigent becomes necessary when the accused elects to avail himself of the right to counsel. In pleading guilty to DWI, first offense, the defendant waived his right to counsel. Accordingly, when the defendant chose not to avail himself of the right to counsel, the issue of indigency became moot, rendering the defendant's status as indigent vel non irrelevant. See Marcoux, 96-0453 at p. 7 n.2, 691 So.2d at 779 n.2.
The trial court did not err in denying the defendant's motion to quash the predicate offense. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In this appeal, the defendant challenges only one of the predicates, namely Docket Number XX-XXXX-XX-XX-XX, Terrebonne Parish, City Court of Houma.
[2] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).